**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-60432-BLOOM/Valle**

RANDOLPH SCOTT PEPKE, JR.,
Individually and as natural parent
and guardian of L.S.P; L.S.P and L.R.P.,

Plaintiff,

v.

FLORIDA DEPARTMENT OF FAMILIES**,** *et. al.*,

Defendants.

_________________________________________/

**OMNIBUS ORDER ON MOTIONS TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Department of Children and Families' ("DCF") Motion to Dismiss Amended, ECF No. [73], Defendant Maria Gandul's ("Gandul") Motion to Dismiss Amended Complaint, ECF No. [74], Defendant Annette Jose's ("Jose") Motion to Dismiss Amended Complaint, ECF No. [83], Defendant Quina Munson's ("Munson") Motion to Dismiss Amended Complaint, ECF No. [84], Defendant Center for Family and Child Enrichment, Inc.'s ("CFCE") Motion to Dismiss Amended Complaint, ECF No. [85], Defendant Yolanda Nogueras's ("Nogueras") Motion to Dismiss Amended Complaint, ECF No. [113], Defendant Mike Caroll's ("Caroll") Motion to Dismiss Amended Complaint, ECF No. [114], Defendant Erica Lee's ("Lee") Motion to Dismiss Amended Complaint, ECF No. [147], and Defendant Belia Pena's ("Pena") Motion to Dismiss Amended Complaint, ECF No. [148], (collectively "Motions"). The Court has reviewed the Motions, all supporting and opposing filings, the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, the Court finds that, under the *Rooker-Feldman* doctrine, it lacks subject-matter

jurisdiction over Plaintiff's claims of constitutional violations under 42 U.S.C. § 1983, requiring the dismissal of this action without prejudice.

## I. BACKGROUND

Plaintiff, Randolph Scott Pepke Jr. ("Plaintiff"), filed this lawsuit individually and as the natural parent and guardian of Lila Snow Pepke, Layla Sky Pepke, and Lily Rain Pepke (collectively "the children") against Defendants arising out of dependency proceedings filed against Plaintiff in state court. *See* ECF No. [60]. According to the Amended Complaint, DCF and CFCE are two political subdivisions of the State of Florida, Defendants Nogueras, Pena, and Lee were child protective investigators working for DCF, Gandul was a client relations coordinator working for DCF, Caroll was a secretary working for DCF, Jose was a quality management manager working for DCF, and Munson was a mental health professional responsible for providing reports to DCF and CFCE. *Id.* at ¶¶ 3-4, 7-12, 14. On November 6, 2015, DCF allegedly removed the children from Plaintiff's care and custody, placing them in foster care after receiving frivolous reports of abuse. *Id.* at ¶ 16. Plaintiff alleges the foregoing occurred without proper investigation or without use of alternative measures to consider the children's best interests. *Id.*

While the children were in foster care, Plaintiff alleges that CFCE failed to maintain their proper welfare and failed to maintain supervision over the children after receiving reports that the children were neglected, abused, and abandoned by foster families, the children's biological mother, and CFCE personnel. *Id.* at ¶ 17. In addition, Plaintiff alleges that CFCE's case managers failed to complete and submit multiple vital reports, documentation and welfare concerns to DCF. *Id.* at ¶ 18. DCF, in turn, ignored information it received regarding reports of child abuse, neglect, and abandonment of the children while in foster care and with the biological mother, and ignored incomplete home studies, case plans, the lack of communication with other agencies, the failure to provide services for the children, and the lack of communication with

Plaintiff regarding the unavailability of case manager replacements. *Id.* at ¶ 19. Child protective investigators Pena, Nogueras, and Lee failed to properly investigate, knowingly gave false information at the shelter hearing, ignored medical examiner facts, and worked with the biological mother in an attempt to falsely accuse Plaintiff and deprive him of custody over the children. *Id.* at ¶¶ 21-22. Pena also directed non-party Sandra Murillo to file a false restraining order against Plaintiff which was later dismissed. *Id.* at ¶ 23. With regard to Gandul and Caroll, Plaintiff alleges they failed to properly investigate Plaintiff's numerous requests and complaints about Pena, Nogueras, and Lee's conduct during the years 2015 through 2017. *Id.* at ¶ 24. Jose purportedly failed to maintain an accurate record of the facts and events despite knowing about the abuse to the children and the reports of false information by DCF. *Id.* at ¶ 25. Munson failed to report known abuse to the children while in the biological mother's custody and the care of foster families while the children were in DCF's protective custody and under CFCE's supervision. *Id.* at ¶ 26. Plaintiff further alleges that Munson falsified information to DCF, the dependency judge, and CFCE about Plaintiff's conduct on two occasions.

During the course of the dependency proceedings in state court, from September 2016 to June 12, 2017, Plaintiff alleges that non-party child advocate agency employees, Brenda Crouch and Alison Irvin, submitted "vital critical time sensitive communications by phone and email requesting the termination of weekly visits" to CFCE case managers, which CFCE and DCF ignored. *Id.* at ¶ 28. Further, at a dependency hearing held on January 12, 2016, the guardian *ad litem* appointed to protect the children's interests voiced "serious concerns" when the children were placed with their biological mother. *Id.* at ¶ 29. Rather than investigate those concerns, Plaintiff alleges that DCF removed the guardians from the case without notice of a hearing to Plaintiff in March of 2016. *Id.* From March of 2016 until August of 2016, no guardian *ad litem* was appointed for the children. *Id.* at ¶ 30. Plaintiff states that DCF knowingly failed to investigate or properly convey vital information

to the dependency court judges so that they could make decisions in the "best interests of the children." *Id.* at ¶ 31.

Plaintiff further alleges that long before the children were placed back in his care, the biological mother failed to attend hearings in dependency court or otherwise make a claim for the children after she falsely accused him and never attended a hearing after July of 2016, violating numerous court orders. *Id.* at ¶ 37. Despite recommendations and evidence demonstrating that Plaintiff was not a danger to the children and that it would be in the children's best interest to be in his permanent custody, DCF continuously failed to close the case and interfered with and harassed Plaintiff and the children. *Id.* at ¶ 38. By August 15, 2016, the children were placed back in Plaintiff's custody after it was determined that they would be harmed if left in the care of their biological mother and foster families. *Id.* at ¶ 32. Plaintiff further alleges that it was demonstrated to the dependency court that the biological mother had coached and manipulated the children to make up stories about Plaintiff. *Id.* After he received custody of the children in August of 2016, Plaintiff states that DCF continued with its frivolous filings and held at least 30 more hearings in an attempt to harass him and defame his character. *Id.* at ¶ 39. After the dependency court acknowledged the compelling evidence that continuing supervision should be terminated, supervision was officially terminated on May 19, 2018 and the case was formally closed by court order on April 3, 2018. *Id.* at ¶ 41.

During the course of the proceedings and prior to the return of the children, Plaintiff alleges that the biological mother subjected the children to physical abuse, verbal abuse, bullying, being forced fed unnecessary medication, being brainwashed to believe that Plaintiff was the culprit, being coached with lies and misrepresentations, having their homework neglected causing them to fail, and being left at home unattended for extended periods of time exceeding eight hours. *Id.* at ¶ 33. In addition, Plaintiff alleges that the children were subject to abuse while in DCF's custody and under

CFCE's supervision, including being locked in rooms, being neglected leading to tooth decay and medical issues such as ring worm, being spit in their faces and food, being physically abused, and being forced to wear clothing and shoes that did not fit, which caused them injury. *Id.* at ¶ 34.

Based on the foregoing allegations, the 36-count Amended Complaint pleads the following claims against Defendants: 42 U.S.C. § 1983[1] ("§ 1983") against CFCE (Count I), § 1983 against Pena individually (Count II), § 1983 against Nogueras individually (Count III), § 1983 against Lee individually (Count IV), § 1983 against Gandul individually (Count V), § 1983 against Caroll individually (Count VI), § 1983 against Jose individually (Count VII), § 1983 against Ronnita Waters ("Waters") individually (Count VIII), § 1983 against Munson individually (Count IX), § 1983 against Terilee Wunderman ("Wunderman") individually (Count X), negligence against DCF (Count XI), negligence against CFCE (Count XII), abuse of process against DCF (Count XIII), abuse of process against CFCE (Count XIV), abuse of process against Pena (Count XV), abuse of process against Nogueras (Count XVI), abuse of process against Lee (Count XVII), abuse of process against Gandul (Count XVIII), abuse of process against Caroll (Count XIX), abuse of process against Jose (Count XX), abuse of process against Waters (Count XXI), abuse of process against Munson (Count XXII), abuse of process against Wunderman (Count XXIII), malicious prosecution against Pena (Count XXIV), malicious prosecution against Nogueras (Count XXV), malicious prosecution against Lee (Count XXVI), intentional infliction of emotional distress ("IIED") against CFCE (Count XXVII), IIED against Pena (Count XXVIII), IIED against Nogueras (Count XXIX), IIED against Lee (Count XXX), IIED against Gandul (Count XXXI), IIED against Caroll (Count XXXII), IIED against Jose (Count XXXIII),

[1] All ten § 1983 counts purport to state violations of Plaintiff's First Amendment right to associate with his children, Fourth Amendment right against the unlawful seizure of his children, and Fifth Amendment right against the unlawful taking of his children and right to due process. *See* ECF No. [60] at Counts I – X.

IIED against Waters (Count XXXIV), IIED against Munson (Count XXXV), and IIED against Wunderman (Count XXXVI). *See* ECF No. [60]. All Defendants with the exception of Wunderman, who Plaintiff voluntarily dismissed from this lawsuit, *see* ECF No. [116], have moved to dismiss the Amended Complaint on numerous grounds. *See* ECF Nos. [73], [74], [83], [84], [85], [113], [114], [147], and [148]. More specifically, Defendants seek dismissal under the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, sovereign immunity, qualified immunity, statutory immunity, as well as dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed Responses in opposition to the Motions and Defendants have each filed a Reply with the exception of Munson.[2] All Motions are ripe for review.[3]

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has

---

[2] Plaintiff filed his Response to Munson's Motion to Dismiss on May 29, 2018. *See* ECF No. [104]. Munson's Reply was, therefore, due on June 5, 2018. To date, Munson has not filed a Reply.

[3] Ronnita Waters' Motion to Dismiss is not yet ripe as it was filed earlier this week. Because the Court ultimately concludes that, under the *Rooker-Feldman* doctrine, it has no subject-matter jurisdiction over the § 1983 claims and it consequently has no subject-matter jurisdiction over this lawsuit, this Motion to Dismiss is moot.

sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

## III. DISCUSSION

Defendants have filed nine Motions to Dismiss, raising overlapping questions, such as the *Rooker-Feldman* doctrine and immunity, as well as individualized questions as to whether the Amended Complaint states a claim against them. Because Defendants call into question the Court's subject-matter jurisdiction under the *Rooker-Feldman* doctrine, the Court will address this issue first.

"It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). "[T]he authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United States." *Id.* (citing *Hollins v. Wessel*, 819 F.2d 1073, 1074 (11th Cir. 1987)). The Supreme Court, in turn, has explained that "the *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284, 293 (2005). Further, "[f]ederal district courts may not exercise jurisdiction to decide federal issues which are inextricably intertwined with a state court's judgment." *Dale*, 121 F.3d at 626. "A district court engages in impermissible appellate review when it entertains a claim that the litigants did not argue in the state court, but is inextricably intertwined with the state court judgment." *Id.* (citing *Feldman*, 460 U.S. at 483 n.16). Relatedly, "[a] federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Even when such claims are "inextricably intertwined" though, the doctrine will not apply unless the plaintiff had "no 'reasonable opportunity to raise his federal claim in state proceedings." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (internal citations omitted)).

Here, Defendants argue that Plaintiff's claims are inextricably intertwined with the

dependency court's order removing Plaintiff's children from his custody and later requiring ongoing supervision. *See* ECF No. [73] at 6-7; ECF No. [74] at 8-9; ECF No. [83] at 10; ECF No. [113] at 8-9; ECF No. [114] at 8-9; ECF No. [147] at 9-10; and ECF No. [148] at 9-10. As such, Plaintiff's claims seek to have this Court review the state court's rulings and orders, which *Rooker-Feldman* does not allow. *Id.* In response, Plaintiff argues that by this lawsuit, he is raising new issues that could have never been raised in the dependency case with new causes of action that do not require review of the dependency court's rulings. *See* ECF No. [96] at 7-8; ECF No. [97] at 8-9; ECF No. [98] at 8-9; ECF No. [123] at 9-10; ECF No. [125] at 8-9; ECF No. [153] at 8-9; and ECF No. [154] at 8-9. Plaintiff thus contends that *Rooker-Feldman* has no applicability here. *Id.*

In Counts I through X of the Amended Complaint, Plaintiff asserts claims under § 1983 for a violation of his First Amendment right to associate with his children, his Fourth Amendment right against a seizure of his children, and his Fifth Amendment right against the unlawful taking of his children and denial of due process. *See* ECF No. [60]. This Court must, therefore, determine whether these claims of First, Fourth, and Fifth Amendment constitutional violations are "inextricably intertwined" with the dependency court's orders. That is, whether Plaintiff's federal claims will succeed "only to the extent that the state court wrongly decided the issues before it." *Siegel*, 234 F.3d at 172.

Eleventh Circuit precedent provides guidance on the application of the *Rooker-Feldman* doctrine to similar § 1983 claims arising from state court dependency proceedings. *See Goodman*, 259 F.3d at 1331-1335. *Goodman* was the first occasion on which the Eleventh Circuit addressed the applicability of *Rooker-Feldman* to claims of constitutional violations arising from dependency proceedings seeking damages instead of injunctive relief. *Id.* at 1333.

Much like the Plaintiff here, the plaintiffs in *Goodman* argued that they were not directly attacking the state court judgment and were instead pursuing a different type of claim – one seeking damages for constitutional violations. *Id.* On appeal, they argued that a distinction should be drawn between cases seeking injunctive relief that directly prevent the enforcement of a state court order versus cases seeking damages under § 1983 related to the state case. *Id.* Explaining that its decisions "focus on the federal claim's relationship to the issues involved in the state court proceedings, instead of on the type of relief sought by the plaintiff," the Eleventh Circuit concluded that "[t]he *Rooker–Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Id.*

Applying these principles, the appellate court then looked at the claims, which asserted constitutional violations in connection with the investigation and initiation of a state juvenile proceeding to remove the plaintiff's son from her custody, to determine whether they were inextricably intertwined with the dependency proceeding. *Id.* at 1328. Specifically, the plaintiff claimed that an affidavit filed by the case worker from the Georgia Department of Family and Children Services was false and that the state's *ex parte* proceedings violated her constitutional rights. *Id.* at 1334. The Court concluded that the plaintiff's "contentions strike at the heart of the state court's proceedings and judgment" because the state court took away the plaintiff's custody after finding the affidavit credible and the resulting *ex parte* order justified. *Id.* As these claims could only succeed in federal court "to the extent the state court wrongly decided' the custody issue," the *Rooker-Feldman* doctrine barred the claims. *Id.*

The Eleventh Circuit next determined whether the plaintiff had a reasonable opportunity to present her challenges to the affidavit and the *ex parte* proceedings in state court. *Id.*

Answering the question in the affirmative, it determined that she was a party to and participated in the dependency proceedings, giving her reasonable opportunity to raise these issues. *Id.* Thus, under the *Rooker-Feldman* doctrine, the district court had no jurisdiction over these § 1983 claims.[4] *Id.* at 1334-35. *See also Alexander v. Lubbe*, 5:10CV209/RS/CJK, 2012 WL 2974778, at *9–11 (N.D. Fla. Apr. 16, 2012), *report and recommendation adopted,* 5:10-CV-209-RS-CJK, 2012 WL 2970522 (N.D. Fla. July 20, 2012) (finding it had no jurisdiction under *Rooker-Feldman* to preside over claims of a parent seeking the return of her children *as well as compensatory damages* as she was asking "a federal tribunal for relief that would, in essence, overturn those state court decisions.").

The Court finds *Goodman*, a binding decision, to be analogous to the claims and allegations in Plaintiff's Amended Complaint. Significantly, Defendants Carroll and Nogueras cited to *Goodman* in their Motions to Dismiss to support their position. *See* ECF No. [113] at 9; ECF No. [114] at 9. Plaintiff, however, did not address or otherwise attempt to distinguish *Goodman* in response to their Motions. *See* ECF No. [123] at 9-10; ECF No. [125] at 8-9.

Applying these principles to this case, the Court must first look to Plaintiff's claims of constitutional violations under § 1983 to determine whether they are inextricably intertwined with the state court dependency proceedings. Plaintiff asserts (1) a violation of his First Amendment right to associate with his children, (2) a violation of his Fourth Amendment right against unlawful seizure of his children, and (3) a violation of his Fifth Amendment right against the unlawful taking of his children and right to due process. *See* ECF No. [60], Counts I through X. In each of the § 1983 counts, Plaintiff alleges that he had a "constitutional right to raise and

[4] The Eleventh Circuit determined that *Rooker-Feldman* did not divest the district court of subject-matter jurisdiction over a separate Fourth Amendment claim involving a search of the plaintiff's home as such evidence was never part of the state custody proceedings. *Id.* at 1334.

live with his children as a family" and that he was deprived of such a right. *Id.* He further states that Defendants deprived him of his constitutional right against unlawful interference with the family unit without affording him due process of law and without reasonable suspicion or conducting a credible investigation before seizing his children. *Id.* As a result of these violations, he seeks damages. *Id.* If Plaintiff is to succeed on his § 1983 claims, it would require a finding that he was unlawfully deprived of his children during the course of the dependency proceedings without due process, which would in turn require a finding that the state dependency court wrongly removed the children from his custody. Much like in *Goodman*, Plaintiff's claims of constitutional violations here "strike at the heart" of the dependency judge's decision to place the children in the custody of their biological mother and in foster care. Thus, the claims are indeed inextricably intertwined.

The Court must next determine whether Plaintiff had a reasonable opportunity to present his constitutional claims in the dependency court. In the Amended Complaint, Plaintiff states that he participated in the dependency proceedings, alleging that DCF held at least 30 hearings in an attempt to harass him and defame his character. *See* ECF No. [60] at ¶ 39. Such proceedings were ongoing for more than two years. *See generally* ECF No. [60]. Thus, Plaintiff, as a participant in the proceedings, had a reasonable opportunity to challenge the falsity of Defendant's claims before the dependency court. *See Goodman*, 259 F.3d at 1334 (finding that parties to the dependency proceeding who were present and participated had "a reasonable opportunity to bring their constitutional challenges" in state court); *Alexander v. Lubbe*, 5:10CV209/RS/CJK, 2012 WL 2974778, at *9 ("In particular, the multitudinous claims of perjury, conspiracy, and falsified documents, are exactly the types of matters that would be raised in the serial child custody proceedings described in the complaint."). Further, Plaintiff

successfully challenged the falsity of the claims made against him as the Amended Complaint alleges that the dependency court acknowledged the compelling evidence that the children should be placed back in Plaintiff's custody and that continuing supervision should be terminated. *Id.* at ¶¶ 32, 41.

As Plaintiff's § 1983 claims are inextricably intertwined with the state court's decision to temporarily remove the children from Plaintiff's custody during the course of the dependency proceedings and as Plaintiff had a reasonable opportunity to raise his claims before that state tribunal, the Court finds that it lacks jurisdiction to grant the relief requested in Counts I through X under the *Rooker-Feldman* doctrine. Having reached this conclusion, the Court must *sua sponte* determine whether it has subject-matter jurisdiction over Plaintiff's remaining state-law claims for negligence, abuse of process, IIED, and malicious prosecution in Counts XI through XXXVI. A "district court may act *sua sponte* to address the issue of subject matter jurisdiction at any time." *Herskowitz v. Reid*, 187 F. App'x 911, 912–13 (11th Cir. 2006). This is because federal courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410.

Plaintiff's § 1983 claims provide the sole basis for federal question subject-matter jurisdiction under 28 U.S.C. § 1331. The Court's review of the Amended Complaint reveals there is no diversity of citizenship to invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332. Thus, subject-matter jurisdiction over the remaining state-law claims is supplemental. 28

U.S.C. § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Here, the Court declines to exercise supplemental jurisdiction over Counts XI through XXXVI as the only claims raising a federal question have been dismissed for lack of subject-matter jurisdiction.[5] Therefore, the Court has no subject-matter jurisdiction over the remaining state-law claims and the matter must be dismissed without prejudice.[6] *See Ramos v. Tomasino*, 701 F. App'x 798, 805 (11th Cir. 2017) ("[A] *Rooker-Feldman* dismissal is a dismissal for lack of subject matter jurisdiction, and '[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.'") (quoting *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)).

## IV. CONCLUSION

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Amended Complaint, **ECF No. [60]**, is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.
2. Defendant Department of Children and Families' Motion to Dismiss Amended, **ECF No. [73]**, **GRANTED IN PART** consistent with this Order.

---

[5] By dismissing Counts XI through XXXVI, the Court does not comment upon or otherwise decide whether Plaintiff has adequately pled such claims or whether Defendants are entitled to any form of immunity. The Court is simply dismissing these counts without prejudice for lack of subject-matter jurisdiction.

[6] As the Court lacks subject-matter jurisdiction over the claims in the Amended Complaint, the Court cannot decide the remaining arguments raised in the Motions to Dismiss. *See Liedel v. Juvenile Court of Madison County, Ala.*, 891 F.2d 1542, 1547 n.8 (11th Cir. 1990) ("Because the district court lacked jurisdiction over this complaint, it should not have considered the merits of the plaintiffs' claims."); *Staley v. Ledbetter*, 837 F.2d 1016, 1017 (11th Cir. 1988) ("We need not address the parties' substantive contentions, because no federal subject matter jurisdiction existed in this case.").

3. Defendant Maria Gandul's Motion to Dismiss Amended Complaint, **ECF No. [74]**, is **GRANTED IN PART** consistent with this Order.
4. Defendant Annette Jose's Motion to Dismiss Amended Complaint, **ECF No. [83]**, is **GRANTED IN PART** consistent with this Order.
5. Defendant Quina Munson's Motion to Dismiss Amended Complaint, **ECF No. [84]**, is **GRANTED IN PART** consistent with this Order.
6. Defendant Center for Family and Child Enrichment, Inc.'s Motion to Dismiss Amended Complaint, **ECF No. [85]**, is **DENIED as moot**.[7]
7. Defendant Yolanda Noguera's Motion to Dismiss Amended Complaint, **ECF No. [113]**, is **GRANTED IN PART** consistent with this Order.
8. Defendant Mike Caroll's Motion to Dismiss Amended Complaint, **ECF No. [114]**, is **GRANTED IN PART** consistent with this Order.
9. Defendant Erica Lee's Motion to Dismiss Amended Complaint, **ECF No. [147]**, is **GRANTED IN PART** consistent with this Order.
10. Defendant Belia Pena's Motion to Dismiss Amended Complaint, **ECF No. [148]**, is **GRANTED IN PART** consistent with this Order.
11. To the extent not otherwise disposed of, all pending motions are **DENIED** as moot.
12. The CLERK is directed to **CLOSE** this case.

[7] CFCE did not raise the *Rooker-Feldman* argument in its Motion to Dismiss. Because the Court has determined that it has no subject-matter jurisdiction over Plaintiff's claims, it need not decide the arguments raised in CFCE's Motion to Dismiss, rendering it moot.

**DONE AND ORDERED** in Miami, Florida, this 20th day of August, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record